United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KURT BLAINE BRIDGES,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No.  25-cv-02493-TLT

**ORDER GRANTING PLAINTIFF'S REQUEST TO REVERSE THE COMMISSIONER'S FINAL DECISION AND REMAND FOR FURTHER PROCEEDINGS**

Re: Dkt. No. 15

Before the Court is Plaintiff Kurt Blaine Bridges's motion for requesting to reverse the Social Security Commissioner ("Defendant")'s final decision that denied his application for disability benefits within Title XVI of the Social Security Act.  ECF 15.

Having considered the parties' briefs, the administrative record ("AR"), relevant legal authority, and for the reasons set forth below, the Court **REMANDS** for further proceedings and reverses the Commissioner's final decision, in part.

## I.    PROCEDURAL HISTORY

On March 26, 2020, Plaintiff applied for supplemental security income benefits, alleging disability beginning January 1, 2019.  AR 17.  Defendant denied Plaintiff's claim initially on November 6, 2020, and denied it upon reconsideration on March 3, 2021.  *Id*.  On February 16, 2023, a hearing was held before Administrative Law Judge (ALJ) Debra Underwood, who thereafter issued an unfavorable decision on January 12, 2024.  AR 17, 27, 32.  On January 27, 2025, the Appeals Council denied Plaintiff's request for review.  AR 1.

On March 12, 2025, Plaintiff filed this action in the Court.  ECF 1.  On July 7, 2025, Plaintiff filed his summary judgment brief, which became fully briefed on September 30, 2025.

ECF 15, 19, 23.

## II.    BACKGROUND

Plaintiff is a 63-year-old male diagnosed with anxiety, paranoia, depression, schizophrenia spectrum disorder, and Post Traumatic Stress Disorder (PTSD).  In addition, he has a history of heroin use and treatment with suboxone.  AR 35, 93, 649, 766.  Plaintiff's disorders became more pronounced during his trip to South America in the mid-2000s.  AR 646.  While there, Plaintiff suffered a mental breakdown in which he started feeling anxious and paranoid.  AR 646–47.  In 2010, he returned to the United States and moved to Berkeley, California.  AR 365, 647.  He has not worked since his return and has become homeless, residing in a van. AR 44, 527, 647.

Plaintiff began seeing Mr. Neulight, a licensed social worker (LSW), around 2017.  AR 47, 427.  Mr. Neulight reported that Plaintiff suffers from anxiety, distrust, paranoia, struggles with concentration, gets easily distracted, and avoids people.  AR 328, 331, 333–34.  In addition to the LSW, psychologists, including Dr. Catlin, evaluated Plaintiff.  AR 527, 766.

On March 17, 2020, Dr. Catlin evaluated Plaintiff and noted the following observations: He appeared alert and oriented.  AR 527.  His thought process was goal-directed and showed paranoia.  AR 527–28.  He had difficulty being around people as his paranoia and anxiety intensified.  AR 530.  He will have great difficulty understanding, remembering, and/or applying information given to him in the workplace.  *Id*.  His mental health symptoms will make it difficult for Plaintiff to socially interact with others.  AR 531.  He has minimal capacity to adapt to environmental changes or to demands that are not already part of his life.  *Id*.

As a result of these observations, Dr. Catlin diagnosed Plaintiff with generalized anxiety disorder and features of schizotypal personality disorder.  AR 649.  On August 9, 2021, she evaluated that, as Plaintiff's paranoia makes it difficult for Plaintiff to maintain friends and deal with people, he will have difficulty learning new tasks and following instructions from a manager or supervisor.  AR 646, 651.  Dr. Catlin further noted that Plaintiff, based on his physical and mental limitations, would be off task more than 30% of the time and absent from work four days or more per month.  AR 653–54.

On December 24, 2021, another psychologist, Dr. Wiebe, evaluated Plaintiff and diagnosed that he suffers from chronic PTSD, unspecified schizophrenia spectrum, other psychotic disorders, and unspecified depressive disorder with anxious distress. AR 766. Dr. Wiebe opined that Plaintiff has a moderate impairment with respect to attention, concentration, memory, and language. AR 765. She further determined that Plaintiff suffers from depression, specifically noting dysphoria, anxiety, social isolation, paranoia, avoidance, amotivation, and low energy. AR 766. She concluded that Plaintiff would have difficulty remembering, attending to, and following through with directions because of his psychiatric and cognitive functioning. AR 765.

## III.    THE ALJ'S DECISION

The ALJ found that Plaintiff had not been engaged in substantial gainful activity since March 26, 2020. AR 19. The ALJ identified several impairments, including opioid use disorder, psychotic disorder, PTSD, and features of a personality disorder. *Id*.

The ALJ found that Plaintiff's impairments did not meet or medically equal the severity of the paragraph B requirements listed. AR 19–21. Specifically, the ALJ found "no evidence of repeated inpatient hospitalization or consistent, ongoing mental health treatment indicative of a highly structured or suggestive of marginal adjustment". AR 20–21.

The ALJ also found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work across all extortional levels. AR 24. The ALJ also found that Plaintiff has nonextortional limitations such as the ability to follow simple instructions, complete simple tasks, and engage with the public only occasionally, because he "had no psychiatric hospitalizations and uses no psychotropic medication." *Id*. The ALJ noted Plaintiff resumed therapy "only to document for SSI," would not attend evaluations scheduled by the agency, and generally "had had unremarkable thought process, alert attention, ability to perform serial 7s, impairment in delayed recall, but otherwise intact memory, good eye contact, and no suicidal ideation." *Id*.

Concurrently, the ALJ found medical opinions from Dr. Catlin, Dr. Wiebe, and Mr. Neulight unpersuasive. AR 25–26. Dr. Catlin's medical opinion was unsupported by objective findings because the Plaintiff could sustain attention and concentration, Plaintiff's thought process was goal-directed, and Plaintiff's memory was intact. AR 25. Additionally, the ALJ found Dr.

United States District Court
Northern District of California

Catlin's findings to be inconsistent with Plaintiff's mental status treatment records because Plaintiff had unremarkable mental status findings. *Id.*

Regarding Dr. Wiebe's medical opinion, the ALJ determined it was inconsistent with objective findings indicating mild to moderate impairments in executive functioning, memory, language, sensory, and motor abilities. *Id.* Moreover, the ALJ determined Dr. Wiebe's extreme limitation opinion was unsupported by the record showing Plaintiff used public transportation, shopped in stores, had friends, and went to the park. *Id.* Plaintiff further reported that he needs no accompaniment to appointments. *Id.* Plaintiff's treatment records also showed average or good eye contact and cooperative behavior. *Id.*

As to Mr. Neulight's medical opinion, the ALJ determined that his opinion was an unacceptable medical source. *Id.* While Mr. Neulight's report indicated that Plaintiff has moderate to marked health limitations and would be absent more than 30% of the time from showing more than four absences per month, the ALJ disregarded it because the report lacked objective evidence and did not include supporting treatment notes. *Id.* The ALJ noted that Plaintiff's most recent psychological testing contradictorily showed only mild to moderate impairment in intellectual functioning, attention and concentration, executive functioning, memory, language, and sensory motor abilities. AR 26.

Given Plaintiff's age, education, work experience, RFC, and the vocational expert's analysis, the ALJ concluded that there are significant numbers of jobs nationwide that the Plaintiff can perform, including cleaning and hand packaging occupations. AR 26–27.

## IV.    LEGAL STANDARD

### A.    STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Social Security Administration and to enter a judgment affirming, modifying, or reversing the decision, with or without remanding the case for a rehearing with instructions. *See* 42 U.S.C. §§ 405(g) and 1383(c)(3). A district court's review of an ALJ's decision is limited to two inquiries: (1) whether the Social Security Administration's findings are supported by substantial evidence and (2) whether the Social Security Administration used correct legal standards. *See Carmickle v. Comm'r, SSA*, 533

4

F.3d 1155, 1159 (9th Cir. 2008).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). Courts reviewing final decisions of the Social Security Administration "look to an existing administrative record and ask whether it contains sufficient evidence to support the agency's factual determinations." *Id.* Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Substantial evidence is "more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). If the evidence has more than one rational interpretation, the ALJ's conclusion rules. *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022). In weighing the evidence, a court must consider the record's entirety, including evidence that bolsters and negates the Commissioner's conclusion. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

## B.    FIVE-STEP FRAMEWORK

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or last for a continuous period of at least twelve months. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. *Tackett*, 180 F.3d at 1098 (citing 42 U.S.C. § 423(d)(2)(A)).

To decide whether a claimant is entitled to benefits, an ALJ conducts a five-step inquiry to assess the claimant's eligibility. 20 C.F.R. §§ 404.1520(a); *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020). "The burden of proof is on the claimant at steps one through four." *Id.* At step one, the ALJ determines whether the claimant is currently working in a substantially gainful activity. *Id.* Substantial gainful activity refers to "work done for pay or profit that involves

5

significant mental or physical activities." *Id.* (citation omitted).  If the claimant is working, the claimant is not disabled, and the analysis stops.  Otherwise, the ALJ proceeds to the step two inquiry.

At step two, the ALJ determines whether the claimant's impairment is severe.  *Id*.  The impairment is severe if the claimant proves the mental or physical impairment limits his ability to perform basic work activities.  *Id*.  If the impairment is severe, the ALJ proceeds to the step three inquiry.  Otherwise, the claimant is not disabled, and the analysis ends.

At step three, the ALJ determines whether the claimant's impairment meets or equals one of the specific impairments detailed in the "list of impairments."  *See* 20 C.F.R. § 404.1520(d) and § 404.1525–26.  If the impairment meets or equals one of the listings, the claimant is considered disabled, and the process ends.  Even if the impairment does not meet this criterion, the ALJ still needs to consider the step four inquiry.

At step four, the ALJ evaluates an assessment of the claimant's RFC and determines whether the claimant can perform his past relevant work, and if he can, he is considered to be not disabled.  20 C.F.R. §§ 404.1520(e), 404.1520(a)(4)(iv).  If the claimant cannot perform his past work, the ALJ moves to step five.  *Id.* at §§ 404.1520(f).

At step five, the burden shifts to the ALJ to prove that the claimant is not disabled and that he "can perform a significant number of other jobs in the national economy."  *Ford,* 950 F.3d at 1149 (citation omitted).  The ALJ considers the assessment of the claimant's RFC and age, education, and work experience to see if the claimant can make an adjustment to other work.  20 C.F.R. §§ 404.1560, 404.1569(a).  If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the ALJ will find that the claimant is disabled.  *Id.* at §§ 416.920(a)(4), 404.1520.

## V.    DISCUSSION

Plaintiff claims the ALJ erred by: (A) not including Plaintiff's anxiety and depression as severe mental impairments, (B) not considering whether claimant's schizophrenia or depression met or equaled the Listings of Impairments; thus paragraph B and C criteria had no substantial evidence supporting their absence, (C) improperly evaluating the RFC, (D) improperly evaluating

United States District Court
Northern District of California

the opinion evidence, (E) determining Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms as inconsistent with the medical evidence.  *See* ECF 15 at 5, 6, 14, 21.  The Court addresses these claims collectively below.

### A.    The ALJ did not commit reversible error at step two in considering anxiety and depression because they were assessed in the subsequent stage.

Plaintiff contends that the ALJ erred by failing to find his anxiety and depression to be severe medically determinable impairments at step two.  ECF 15 at 9–10.  Plaintiff argues that these conditions have more than "a minimal effect on his ability to work and meet the durational requirements."  *Id*. at 9.

The Court finds that even if the ALJ failed to identify anxiety and depression as "severe" at step two, the ALJ properly incorporated these concerns into the subsequent stage of the RFC evaluation.  *Brown v. Berryhill*, No. 17-CV-02834-JCS, 2018 WL 400348, at *14 (N.D. Cal. Sept. 29, 2018) ("To the extent that the ALJ committed any error at Step Two, such error was harmless because the ALJ went on to address the concerns raised by Brown at subsequent points within the five-step framework."); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)  ("[Because] the ALJ considered any limitations posed by the bursitis at Step 4[,] any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.") (quotation altered).

In the evaluation of step four, the ALJ recognized Plaintiff's mental status findings from April 2021 include, *inter alia*, "depressed/anxious mood" and "depressive cognition."  AR 22–23.  However, the ALJ also noted that Plaintiff "had good eye contact, full affect, unremarkable thought process, full orientation, and appropriate judgment."  AR 23.  His "thought process was goal-directed and he reported no suicidal thoughts."  *Id*.  During the follow-up evaluation in August 2021, he "reported continuing anxiety [] but no suicidal thought."  *Id*.  In another evaluation in December 2022, he was described as "depressed and anxious" and "had some passive suicidal ideation and expressed feelings of hopeless, guilt, and worthlessness."  *Id*.  He reported "experiencing severe anxiety [and] depression" and was diagnosed with "unspecified depressive disorder with anxious distress."  AR 24.

Accordingly, the Court finds that the ALJ did not err in failing to consider anxiety and

United States District Court
Northern District of California

United States District Court
Northern District of California

depression.

**B.     The ALJ's step three and four analysis was erroneous because the ALJ failed to properly consider Plaintiff's Schizophrenia spectrum disorder**

Plaintiff contends that the ALJ erred in the step three analysis because she did not consider whether Plaintiff meets or equals 12.03 or 12.04, and did not properly analyze paragraph B criteria, and her findings in paragraph C are not supported by substantial evidence.  ECF 15 at 10–18.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Ford*, 950 F.3d at 1148 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  "Listed impairments are purposefully set at a high level of severity because "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.""  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

The Court finds the ALJ's evaluation of Plaintiff's schizophrenia was not supported by substantial evidence.  Schizophrenia is a severe and debilitating impairment.  Most individuals diagnosed are unable to function in structured environments.  A review of the record indicates that medical opinions and other treatment sources consistently state that Plaintiff suffers from schizophrenia or related psychotic disorders.  *See* AR 92, 105–07, 125–26, 366, 367, 369, 381, 371, 375, 377, 382, 384, 649–51, 680 750, 756, 758, 759, 766, 776.  Despite acknowledging the diagnosis of "unspecified schizophrenia spectrum and other psychotic disorder," AR 24, the ALJ downplayed the implication of this impairment.

In step four, the ALJ observed that Plaintiff sought only sporadic treatment without psychiatric hospitalizations or psychotropic medications.  *Id*.  Although he consistently reported symptoms, the ALJ noted he "generally had unremarkable thought process, alert attention, ability to perform serial 7s, impairment in delayed recall, but otherwise intact memory, good contact, and no suicidal ideation" to the extent that his RFC was limited to simple tasks and occasional public interaction, rather than a finding of a greater degree of limitation.  *Id*.  This approach attempted to fit the evaluation in *Lewis*, 498 F.3d at 911, by observing the claimant's limitations through

symptoms and records; however, the ALJ's focus failed to reconcile the consistent reports of paranoid delusions and social alienation that may characterize Plaintiff's schizophrenia spectrum disorder. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (finding that the ALJ erred in favoring opinions of mild impairment over those of schizophrenia that relied on equivocal testimony evidence).

### C.   The ALJ erred in evaluating medical opinions about schizophrenia.

Plaintiff contends that the ALJ arbitrarily substituted her own lay opinion for the competent medical opinions of his treating and examining providers. ECF 15 at 20–25. Plaintiff argues the ALJ improperly rejected the opinions of Dr. Catlin, Dr. Wiebe, and Mr. Neulight, all of whom opined marked or extreme limitations. *Id*. To support his proposition, Plaintiff cites a number of records. AR 524–85, 645–55, 755–77.

"Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. . . . Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when *it is consistent with other independent evidence in the record*." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148–49 (9th Cir. 2001) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751–52 (9th Cir. 1989)). "If the opinion of an examining doctor is contradicted by another doctor, it 'can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.'" *Jennie C. v. Bisignano*, No. 25-CV-02632-DMR, 2025 WL 3764663, at *3 (N.D. Cal. Dec. 30, 2025) (citing *Ford*, 950 F.3d at 1155).

Here, the ALJ afforded Dr. Catlin's opinions little weight because her assessed limitations were not supported by or consistent with objective findings in the record or her own objective findings. AR 25. Specifically, the ALJ stated, "[a]lthough Dr. Catlin opined marked to extreme limitation in the area of concentration, persist, or maintain pace, her objective findings show that the claimant was able to sustain attention during the evaluation, and performed normally on the attention subtest." *Id*. The ALJ found the remainder of her opinion failed for the same reason. *Id*.

Similarly, the ALJ found Dr. Wiebe's opinions unpersuasive because her findings of moderate to extreme limitations in mental abilities and social interactions were not consistent with her objective findings showing a lesser degree of mild to moderate impairment. *Id*. Finally, the ALJ discounted Mr. Neulight's opinion because, as an LSW, he is not an acceptable medical source, and his assessment lacked supporting treatment notes while conflicting with psychological testing showing only mild-to-moderate impairments. *Id*. at 25–26.

Nevertheless, the Court finds the ALJ's dismissal of the evidence regarding schizophrenia particularly problematic. While the ALJ discounted Mr. Neulight's opinion because he is not an "acceptable medical source," he had observed Plaintiff on a monthly basis since 2017. *See* AR 427–28, 435. Mr. Neulight's reports of paranoid delusions and distrust align closely with the schizophrenia diagnoses provided by Dr. Catlin and Dr. Wiebe.

Accordingly, the Court finds that the ALJ failed to properly account for the impact of schizophrenia.

### D. The ALJ provided multiple reasons for her assessment of Plaintiff's symptom testimony, but failed to account for the impact of schizophrenia.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting his testimony regarding the intensity and persistence of his symptoms. ECF 15 at 25–26. Plaintiff argues that he should not be responsible for his failure to seek consistent treatment. *Id*. at 26.

The Court finds that the ALJ considered Plaintiff's live testimony and reasonably discounted it in part. During the hearing, the ALJ recognized that Plaintiff alleged that his mental impairments prevented him from working. AR 43. Plaintiff testified that he experienced paranoia. *Id*. He believed people followed him in cars, but such a belief declined when he stopped driving. AR 49–50. He also heard yelling near his van and sometimes a bell. AR 51, 54. He reported seeing a lady with angel wings. AR 53. He testified that it bothers him when people come near him at the park and that it is hard for him to trust people. AR 59–60, 68.

Here, the Court acknowledges that the ALJ provides multiple reasons for discounting Plaintiff's testimony based on the longitudinal medical records, Plaintiff's conservative treatment, Plaintiff's failure to seek care, and the PAMFs. AR 20–24; *see Nadon v. Bisignano*, 145 F.4th

United States District Court
Northern District of California

1133, 1137 (9th Cir. 2025) (finding the ALJ's several reasons for her assessment of the claimant's testimony justify discrediting the testimony). However, in light of the ALJ's failure to address the severe symptoms associated with Plaintiff's schizophrenia, the stated reasons are in conflict and are not supported by the evidentiary record. *See Wright v. Astrue*, 624 F. Supp. 2d 1095, 1112 (N.D. Cal. 2008) (holding that discrediting the plaintiff's testimony that may conflict with the evidentiary record is not enough basis as a matter of law).

Accordingly, the Court finds that the ALJ erred by discrediting testimony that may be associated with the Plaintiff's schizophrenia spectrum disorder.

## VI.    CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's request to **REMAND** and reverses the Commissioner's final decision, in part. On remand, the ALJ is instructed to specifically evaluate the severity of Plaintiff's schizophrenia spectrum disorder and limitations in light of the consistent medical opinions and the longitudinal observations.

IT IS SO ORDERED.

Dated: March 25, 2026

TRINA L. THOMPSON
United States District Judge

United States District Court
Northern District of California

11